

**FILED**

MAR 14 2016

CARMELITA REEDER SHINN, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY_____,DEPUTY

PETITION UNDER 28 USC § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | Western District | |
|---|---|---|
| Name: **Megan Nicole Hammers** | Prisoner No. **693220** | Case No. |
| Place of Confinement: **Mabel Bassett Correctional Center** **29501 Kickapoo Rd.** **McLoud, Ok 74851** | | **CIV-16-0244-HE** |

| Name of Petitioner | | Name of Respondent |
|---|---|---|
| **Megan Nicole Hammers** | v. | **Debbie Auldridge, Warden** |

The Attorney General of the State of: **Oklahoma**

# PETITION

1. Name and location of court which entered the judgment of conviction under attack? **Oklahoma County**

2. Date of judgment of conviction: **February 27, 2014**

3. Length of sentence: **Eighteen Years (18)**

4. Nature of offense involved (all counts) : **Child Abuse 21 O.S.2011,§ 843.5**

5. What was your plea? (Check one)
   (a) Not Guilty            **X**
   (b) Guilty                _
   (c) Nolo Contendere       _

   If you entered a guilty plea to one indictment, and a not guilty plea to another count or indictment, give details:
   **N/A**

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury                  **X**
   (b) Judge only            _

7. Did you testify at the trial? **Yes**

8. Did you appeal from the judgment of conviction? **Yes**

9. If you did appeal, answer the following:
   (a) Name of court : **Oklahoma Court of Criminal Appeals**
   (b) Result **Affirmed**
   (c) Date of result and citation, if known : **Unpublished, October 2015**

(d) Grounds raised: **PROPOSITION I**: Appellant was denied the constitutional right to effective assistance of trial counsel; 1) Trial Counsel prevented Ms. Hammers from making intelligent and knowing decisions regarding her case and counsel's representation. a) Trial Counsel failed to communicate with Ms. Hammers and prepare her for trial b) Trial counsel failed to provide Ms. Hammers her child's medical records prior to trial. 2) Trial counsel was ineffective in failing to retain experts to rebut the State's evidence of shaken baby syndrome. 3) Trial counsel was ineffective in failing to present evidence to rebut the State's evidence of SBS 4) Trial counsel was ineffective in failing to present evidence in support of Ms. Hammers' defense of accident and rebut the State's evidence a) Ms. Hammers' child's head and eye injuries could have resulted from the impact head trauma he sustained during his older brother's fall, b) Ms. Hammers' child's bone injuries could have resulted from non-abuse causes. 5) Trial counsel was ineffective in failing to object to the State's presentation of irrelevant, prejudicial and inflammatory evidence. 6) Trial counsel was ineffective in failing to call Dr. Buffington as a witness to rebut the State's characterization of Ms. Hammers, 7) The cumulative effect of trial counsel's ineffective assistance denied Ms. Hammers of a fair trial. **PROPOSITION II**: The trial court erroneously deprived appellant's right to counsel of her choice.

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions,
    applications, or motions with respect to this judgment in any court, state of federal?
    (a) (1) Name of court **Oklahoma Court of Criminal Appeals**
        (2) Nature of proceeding: **Supplementation of Appeal and Request Evidentiary Hearing**
        (3) Grounds raised: Ineffective Assistance of trial counsel: **a)** Ms. Hammers' correspondence with trial counsel and Kent Bridge, Esq.; **b)** Character evidence from Bill Buffington, M.D. who was available but was not called to testify at Ms. Hammers' trial; **c)** Statements from apppellate counsel, Ms. Hammers, Charles Hammers, and Ben Hall; **d)** Documents available during discovery containing information supportive of Ms. Hammers' trial defense.

2

11  Did you receive an evidentiary hearing on your petition, application or motion? **NO**

12.  State *concisely* every ground on which you claim that you are being held unlawfully. Summarize *briefly* the *facts*
supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting same.
CAUTION: In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

A.  Ground One (a)(b): **THE LOWER COURTS DECISION WAS CONTRARY TO AND AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED LAW WHEN THEY RULED COUNSEL WAS NOT INEFFECTIVE FOR FAILURE TO CONSULT AND PREPARE PETITIONER FOR TRIAL**
*(correlates to Proposition I(a)(b) Direct appeal)*

Supporting FACTS:  In Petitioner's direct appeal appellate counsel put forth the assertion that counsel under *Strickland* was ineffective due to the fact that counsel failed to consult with her client regardless of the numerous attempts that were made by Petitioner. From the time of being retained to date of trial one year and six months had elapsed. During that time Petitioner had repeatedly stated she wanted to understand how the state could make a case where there was no case. Medical records are key to both the prosecution and defense of a child abuse case, especially when there is no direct evidence of the alleged abuse. This is one area of the law where medical and scientific evidence ( i.e., biomechanics) are used to prove all of elements of the crime. After continued delay Petitioner enlisted the help of medical personnel to aid her in understanding the injuries that her son had suffered and went unnoticed by medical personnel upon his well-being  checks. Even with the Petitioner doing the "foot work" to gain understanding of the medical records she still continued to contact counsel in order to get her to send the medical records. By time of trial counsel still had not  sent them or contacted petitioner. Appellate counsel supplemented the appeal record with emails to show petitioners earnest attempts to contact counsel and to understand what was going on. After months of being ignored by counsel petitioner retained a second attorney just "in case" counsel failed to even show for trial. Not only did counsel fail to consult with petitioner for testifying and keeping her informed about her case so she would be able to make intelligent and informed decisions, counsel also failed to prepare any witnesses. (*Proposition I (b)*) (See Exhibit A) Counsel did not consult with her client to determine what other activities could have been considered to have caused the injuries the child suffered. In a case where only medical and expert opinions could possibly shed light upon injuries, failure to elicit valuable information available only by attending physician and seek

3

appropriate evidence in support of defense resulted in a certain verdict. In the present case the physician for the child was prepared to state that the child appeared healthy during his check-ups yet counsel failed to consult with the doctor and to call him for a witness.(See Exhibit B) In a medical injury there is no reason why would an attorney would **not** contact the one person who can provide valuable medical information concerning the victim and his medical record. Not only was this doctor responsible for the victim's care he also was the physician for the petitioner and could attest to her physical disposition and need for pain medications especially in light of the state's accusation of her being an"addict". This prejudiced the petitioner because she was left without a defense. When she took the stand she had begun to think that maybe someone had harmed her son and began to provide possibilities for the jury to consider. Since counsel had not consulted with her it greatly affected her when she appeared to have abandoned her defense of accident. Combined with the fact counsel failed to present witnesses that could at least support her innocence at the most basic level left the jury with the impression that petitioner was "floundering" in her effort to provide a reasonable explanation. The lower court unreasonably and contrary to state law (*Grant 95 P.3d 178*) and the Supreme Court (*Faretta v. California 95 S.Ct. 2525* and *Strickland*) failed to find counsel ineffective. This deprived petitioner of a fair trial and requires a reversal for a new trial. This was raised to the highest court.

### B. Ground Two: THE LOWER COURTS DECISION WAS CONTRARY TO AND AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED LAW WHEN THEY RULED COUNSEL WAS NOT INEFFECTIVE FOR FAILURE TO PROCURE AN EXPERT WITNESS WHERE THE ONLY REASONABLE AND AVAILABLE DEFENSE STRATEGY REQUIRED CONSULTATION WITH EXPERTS AND EXPERTS EVIDENCE

( correlates to Proposition I(2)(3)Direct appeal)

Supporting FACTS::            Contrary To:

In Petitioner's direct brief counsel raised multiple issues under the ineffective counsel standard of *Strickland*. Although *Strickland* was not directly cited in OPINION on this ground it was assumed reviewed under Strickland except when it mentioned *Richter*. The facts of this case set forth the necessity of an expert witness on Shaken Baby Syndrome (SBS), Pediatrics, and Bone injuries involving children. Experts were also needed concerning the hazards of consumer products, specifically Baby Jumpers. The defense revolved around injuries that could only be understood by the triers of fact through expert testimony and failure to obtain such experts deprived Petitioner of a fair trial.

During Thanksgiving week of 2011 while changing her six month old son's diaper her four year old son fell and struck the toddler in the face with his knee while running through the house. Not observing more

than the normal response of crying petitioner accepted that there did not seem to be a signicant injury and did not take the toddler to the ER. A week later petitioner noticed the toddler's eye turning what appeared to be inward. State asserted that petitioner had no intent to take her son for medical care because she went after a meeting with him concerning child support. However petitioner had already intended to take her son to the E.R. After consulting with the toddler's father petitioner took the child to OU medical center. A CT scan revealed a subdural hematoma. At the same time a MRI revealed additional subdural hematomas. A skeletal survey and funduscopic examination showed various eye and bone injuries. The tests ruled out retinal hemorrage and detachment. (See Exhibit C ) The doctors at OU asserted the injuries were caused by SBS whereas petitioner claims the eye injury was the result of the accidental fall and (after significant research) the bone injuries from a baby jumper. This case totally relied upon medical evaluation/explanation by experts in the field of SBS and infant bone injuries as well as consumer products. (The theory of Shaken Baby Syndrome was a hypothesis created in the 1970's that suspected child abuse when all three of a "triad" of injuries were apparent in a child.) The state provided experts who erringly relied upon the "triad" of injuries that consist of 1) subdural hematoma, 2) retinal hemmorage, 3) cerebral edema (brain swelling) without all three injuries being present, in fact with only one of the injuries present and falsely stating that two (retinal hemoraging and subdural hematoma) were present. Beginning in the late 1980's advancements were made into the scientific testing of the SBS theory that resulted in the findings that 1) SBS was impossible to occur without serious neck injury and 2) that multiple causes could result in the same symptoms that had been restricted to SBS only. By 2009 a leading former child abuse prosecutor, Professor Trukheimer concluded that the science of SBS could no longer support a finding of proof beyond a resonable doubt in triad cases only. The Supreme court in 2011 (*Cavazos v. Smith*) concluded the same, that SBS was unsustainable. Counsel stated at the beginning of the case she knew experts were a necessity and intended to procure them. (She needed them to help her understand the syndrome as well as help the jury understand the fallacies of the state's case.) Dispite knowing this counsel failed to procure expert witnesses to aide in the defense. The lower court quoted *Harrington v. Richter* with the interpretation that " every prosecution expert does not require an equal and opposite expert from the defense." This is not the interpretation that the Supreme Court stated in *Hinton v. Alabama*. In that case the Supreme court clearly set out that "Criminal cases will arise where the only reasonable and available defense strategy requires consultation with experts or introduction of expert evidence." That is the instance in the present case. Defense did not provide a single expert witness. This even fails in the rulings of the lower court's previous decisions. In the OCCA they have ruled repeatedly that where expert witnesses are imperative to a defense they are vital to ensure a fair trial. In a case with similar facts (See Attached D) the court found counsel ineffective. In other

5

situations where facts are not alike but the only way to understand the evidence requires an expert, the lower court found counsel ineffective (*Smith v. State*, 2006 OK38, 144 P.3d. 159 and *Bechtel*) as well as this court setting precedent in *Paine* for expert witness in BWS. Since 2002 major inroads have been made in the SBS assertion that has since been renamed due to scientific evidence that reveals it is impossible to cause those injuries by shaking. The state attorney quoted *Brafford v. State* to support it's argument. Apparently unknown to the state is the current status of which Brafford is back in District Court under direction of OCCA for evidentiary hearing to establish the necessity of expert witness in SBS. This should have been the ruling for the present case. The only reason that petitioner can find for the lower court not ordering an evidentiary hearing is the ineffectiveness of appellate counsel to properly present Rule 3.11 Motion to the lower court and failure to obtain affidavits from experts after review of records. Rather than collecting multiple articles appellate counsel should have sought to procure affidavit of experts after review of medical and court records. This could be the reason the decision by the lower court was contrary to it's own rulings, this courts ruling and the supreme court rulings which hold that "criminal cases will arise where the only reasonable and available defense strategy requires consultation with experts or introduction of expert evidence." If counsel had secured expert witness she could have rendered a different verdict for several reasons:

   1) the state testified to SBS when it was lacking two of the triad to even suspect SBS.

   2) the state said the toddler had retinal hemorraging when the medical report stated clearly there was none, yet counsel did not understand the reports and therefore unable to refute the error presented by state expert.

   3) the only witnesses was a four year old, six month old, Ben Hall, Hall's son and the petitioner and an explanation of accident could only be accomplished by way of experts.

   4) the effect of an interval of two weeks before seeing medical personnel that undoubtedly contributed to diagnosis and affected medical examination.

   5) the failure to show lack of suspicion/ accusation by babysitter or others prior to ER visit did not support abuse which would be supported by child's physician and wellness checks.

   6) the obvious fallacy of the state experts relying on a "partial triad" of a debunked theory that has launched it's own "innocence project" to undo the result of untested hypothesis of thousands incarcerated as in this case and has continued to abandon previously held beliefs.

   7) point out that in the Affidavit of Probable Cause by Detective Leitch Dr. Stuemky stated "that the fractures appear to be from some type of jerking action, as if someone had jerked the infants legs down at the same time" which was the result of the fractures. *This is in support of*

> *petitioners statements that "the older children were rough with the toddler while in the baby jumper at times and would pull him down by his legs" and she would get onto them.*
> 8) Counsel could have shown that the state's doctors described the exact injury that would have resulted in corroboration of the testimony of petitioner if she had a) read and studied the records and b) retained expert witnesses.
> 9) Experts have proven that without significant neck injury there has not been an instance of shaken baby syndrome. Counsel never introduced the *absence* of this **vital and necessary** injury to support SBS.

Expert witnesses would not have been equal or opposite for refutation purposes but to provide a reasonable standard of representation. The lower court chose the right standard in *Strickland* but applied it incorrectly as shown in Supreme Court cases with similar facts that ruled differently resulting in a decision contrary to clearly established law.

## Unreasonable Application

The lower court's application of *Strickland* and *Harrington v Richter* was unreasonable. In the present case we have counsel for the petitioner who after assuring petitioner she was going to have an expert witness failed to procure any. Trial strategy from the out set was to use experts. This case hinged on the interpretation and understanding of experts in various fields of medicine. It contained many factors such as time interval of weeks before medical personnel evaluated the injury and the understanding of an injury that can only be understood through specific identifiers that have drastically altered in the past decade as well as the complexities of a syndrome that has been scientifically proven unsustainable. What errors occurred due to this failure are: 1) State witness testified to toddler having been the victim of SBS because of a subdural hemmatoma and retinal hemmoraging. Counsel failed to point out that even "old theology" of SBS required a "triad" of injuries- a subdural hemmatoma, retinal hemmoraging and edema (swelling of brain). 2) The state testimony that the toddler has retinal hemmoraging was untrue and unsupported. The OU medical record shows that they ruled out retinal hemorrage and detachment. Counsel failed to show that not even two of the triad was present and the medical records support this fact. 3) Counsel allowed state to present false evaluation of records because she did not have an expert to help her understand- if in fact counsel even read the medical report. 4) counsel did not know or understand the theory of SBS and was unable to put it to fair adversarial testing to point out fallacies. New progress since the past decade has revealed that simple accidents of a three foot fall can kill a toddler so the fact that a four year old at approximately 30-40 lbs. falls and lands on a six month old while running can cause significant injury. 5) Due to counsel not understanding or knowing the progress on SBS

resulted in failure to present a defense of accident as petitioner has stated all along.
6) Petitioner was left without the ability of showing by evidence and experts the possibility of accident. 7) Counsel failed to provide evidence that was readily available on SBS and child jumpers. 8) Counsel left the bone injuries without any explanation or understanding leaving it to the state's inference that it was abuse.
9) Counsel failed to show that the statement from Dr. Stuemky supported Petitioners explanation of the fractures possibly being the result of older children pulling down on the jumper while playing with him. (See Exhibit E)

Counsel failed to present a meaningful defense without aid in understanding the medical issues that only experts can know leaving the jurist with the only acceptable alternative of the state's presentation. Appellate counsel struggled to present a meaningful appeal without aid in understanding the medical issues that only experts can know leaving OCCA with a less than stellar presentation of issues as noted in Summary Opinion page 4 ¶ 2 the court states " Hammers offers no affidavits from experts suggesting that, in this case, medical evidence would have supported another cause for the victim's injuries". The record itself shows that the doctors testimony of the fractures supports petitioner's testimony. An expert for the defense would have revealed the discrepancy between the OU medical report (no eye injury) and state expert testimony claiming eye hemorrhages and other injury. All these and more resulted in a certain verdict of guilt and requires reversal for new trial or dismissal altogether.

C. Ground Three: **THE LOWER COURTS DECISION WAS CONTRARY TO AND AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED LAW WHEN THEY RULED COUNSEL WAS NOT INEFFECTIVE FOR FAILURE TO PRESENT EVIDENCE TO REBUT THE STATE'S EVIDENCE LEAVING PETITIONER WITHOUT ANY DEFENSE OF ACCIDENT**
( correlates to Proposition I(4)(6)Direct appeal)

Supporting FACTS : There was multiple testimony by the state that should have been and was not put to adversarial testing. Not only was the evidence of state expert testimony questionable also the basic proponents of a defense which pertains to direct involvement was ignored and discarded by counsel. The child's pediatrician and other medical professionals that was around toddler often and could attest to his health was not called. The doctor that could attest to the petitioner's health to refute the slander of her character as a drug addict was not called. Petitioner's parents and child's babysitter attested to absence of abuse. Ben Hall a friend of the petitioner who witnessed the accident the week of Thanksgiving supported petitioner's defense of accident. Counsel could have maximized the use of this evidence yet failed to even prepare her witnesses for trial despite repeated requests from petitioner to strategize and consult with her about the defense. (See Exhibit

8

F) She left petitioner believing she had expert witnesses retained but did not. All these, combined with the greatest error of failure to procure expert testimony, especially in light of the fallacies in state's case resulted in a certain verdict of guilty. Petitioner was denied a fair trial

### D. Ground Four: THE LOWER COURTS DECISION WAS CONTRARY TO AND AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED LAW WHEN THEY RULED COUNSEL WAS NOT INEFFECTIVE FOR FAILURE TO OBJECT TO THE STATE'S PRESENTATION OF IRRELEVANT, PREJUDICIAL, AND INFLAMMATORY EVIDENCE VIOLATING THE PRIOR EVIDENTIARY RULING
*( correlates to Proposition I(5)Direct appeal)*

Supporting FACTS: Before trial a motion in limine to exclude evidence and testimony regarding the divorce between petitioner and her estranged husband was granted with the state's agreement. Much later the state during examination of another witness elicited testimony in violation of evidentiary ruling regarding the disposition of petitioner and characterized her as "angry". Counsel did not object to the violation of the ruling nor attempt to refute characterization on cross of witness. The state then went on to make an accusatory implication of petitioner's use of pain killers, labeling petitioner as an addict. Petitioner was under the care and supervision of her physician Dr. Buffington. Normally when patients are prescribed medications that cannot be purchased over the counter at any drug store, they are regulated by the Bureau of Narcotics and Dangerous Drugs. These medications are monitored by several agencies and never monitored lightly. Even though Dr. Buffington did eventually dismiss petitioner as a patient there is no indication the dismissal was due to any type of abuse of her prescription medicine. The state claimed that the door had been opened to this line of inquiry when in fact it had not. Counsel did state that there was never drug usage brought out in the entire investigation. However she fell short of objecting on the ground of introducing things not in evidence and in violation of in limine which resulted in an entirely deficient objection. Counsel failed to provide the court with support that the detectives who interviewed petitioner stated that if petitioner had been under the influence they would have known since they had been trained in that specific area. The state hacked away at the character of the petitioner using unsupported accusations based on supposed facts not in evidence without any defense from counsel to the contrary. Not finding counsel ineffective is an unreasonable decision in light of the facts. Counsel presented her appearance at trial basically nothing more. This error requires a reversal for new trial.

13.   If any of the grounds listed in 12 A, B, C, and D were not previously in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them: **N/A**

14. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack? **No**

15. Give the names and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(a) At preliminary hearing: **Renee Gish**

(b) At arraignment: **Renee Gish**

(c) At trial: **Renee Gish**

(d) At sentencing: **Renee Gish**

(e) On appeal: **Timothy J. Synar and Mark K. Bailey**

(f) In any post-conviction: **N/A**

(g) On appeal from any adverse ruling in a post-conviction proceeding: **N/A**

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court at the same time? **No**

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack? **No**

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_____
Petitioner, Pro Se

I declare under penalty of perjury that the foregoing is true and correct. Executed on

3-3-16
Date

_____
Signature of Petitioner

10

## CERTIFICATE OF MAILING

This is to certify that on this ___10th___ day of March, 2016, a true and correct original and two copies of the foregoing Writ of Habeas Corpus was placed in the institutional mailbox, postage pre-paid, to:

Office of the Clerk
United States District Court
Western District of Oklahoma
200 N.W. 4Th Street
Oklahoma City, Oklahoma 73102-3092

Megan Hammers # 693220
Mabel Bassett Correctional Center
29501 Kickapoo Rd.
McLoud, Oklahoma 74851

_____
Megan Hammers, Petitioner, Pro Se