**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **MEGAN NICOLE HAMMERS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. CIV-16-244-HE** |
| | ) | |
| **DEBBIE ALDRIDGE, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## REPORT AND RECOMMENDATION

State prisoner Megan Hammers has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging the constitutionality of her state court conviction. (ECF No. 1). Ms. Aldridge has filed a Response to Petition for Writ of Habeas Corpus. (ECF No. 16). For the reasons set forth below, it is recommended that the Petition be **DENIED**.

## I.   BACKGROUND

On December 8, 2011, Petitioner took her then 6-month-old baby, M.B., to OU Children's Hospital Emergency Room because approximately five days prior, she noticed that the baby's left eye had turned inward and the condition had not resolved itself.[1] Medical tests were performed which revealed numerous injuries to the baby, including multiple subdural hematomas, fractures in both legs and the right wrist, optical neuropathy in both eyes, and retinal hemorrhaging in the left eye which required

---

[1] Volume IV of IV Transcript of Trial Proceedings had on the 27th day of February, 2014 Before the Honorable Donald L. Deason, *State of Oklahoma v. Megan Nicole Hammers*, Case No. CF-2012-578 (Okla. Co. Feb. 27, 2011) at 92, 101 (Trial TR. Vol. IV).

surgery.[2] The subdural hematomas and fractures were determined to be of varying ages.[3]

Armed with this information, hospital officials contacted the Edmond Police Department and the Department of Human Services who opened an investigation regarding possible abuse against M.B. (Trial TR. Vol. II 206). During the course of the investigation, Ms. Hammers stated that she believed M.B.'s injuries were the result of: (1) an accident which had occurred approximately two weeks prior, where M.B.'s four-year-old brother accidentally fell on the baby during a diaper change, striking the child's face and (2) M.B.'s older brother playing "rough" with the baby while he was seated in a "bouncy jumper seat" affixed to a door frame--pulling on his legs or the cords of the jumper seat so that the baby's legs would hit the floor. (Trial TR. Vol. II 75-78, 80, 102, 212, 216-217).

On January 27, 2012, Petitioner was charged with Child Abuse. Criminal Appeal Original Record, *State of Oklahoma v. Megan Nicole Hammers*, Case No. CF-2012-578 (Okla. Co.) at 1-2. (O.R.).[4] Following a trial in February 2014, a jury convicted Ms. Hammers of Child Abuse and recommended a sentence of 18 years in prison. (O.R.

---

[2] Volume II of IV Transcript of Trial Proceedings had on the 25th day of February, 2014 Before the Honorable Donald L. Deason, *State of Oklahoma v. Megan Nicole Hammers*, Case No. CF-2012-578 (Okla. Co. Feb. 25, 2011) at 142-144, 155-156, 161-162, 274, 277, 280-281 (Trial TR. Vol. II); Volume III of IV Transcript of Trial Proceedings had on the 26th day of February, 2014 Before the Honorable Donald L. Deason, *State of Oklahoma v. Megan Nicole Hammers*, Case No. CF-2012-578 (Okla. Co. Feb. 26, 2011) at 75-76, 86, 97, 101-104, 117-118 (Trial TR. Vol. III).

[3] (Trial TR. Vol. II 155-156); (Trial TR. Vol. III 78-79, 86, 97, 103, 117-118).

[4] In September 2012, the Information was amended to include an alternative charge of Child Neglect. (O.R. 29-30).

193). On May 29, 2014, the trial court entered Judgment and Sentence accordingly. (O.R. 238-239).

Following the conviction, Ms. Hammers filed a direct appeal. (ECF No. 16-1). On August 10, 2015, the Oklahoma Court of Criminal Appeals ("OCCA") affirmed Petitioner's conviction. (ECF No. 16-3). On March 14, 2016, Ms. Hammers timely filed her habeas petition. (ECF No. 1). In her four grounds for relief, Ms. Hammers alleges multiple instances of ineffective assistance of trial counsel. (ECF No. 1).

## II.   STANDARD OF REVIEW FOR HABEAS RELIEF

In accordance with the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), this Court's power to grant habeas corpus relief to state prisoners is limited. *Snow v. Sirmons,* 474 F.3d 693, 696 (10th Cir. 2007). Under the AEDPA, the standard of review applicable to each claim depends upon how that claim was resolved by the state courts. *Alverson v. Workman,* 595 F.3d 1142, 1146 (10th Cir. 2010) (citing *Snow,* 474 F.3d at 696). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

Under the AEDPA, a petitioner is entitled to federal habeas relief only if the merits-based adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2) (1996).

"The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007).

Review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits. *See Cullen v. Pinholster,* 563 U.S. 170 (2011). "If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Id.* at 185. "It is the petitioner's burden to make this showing and it is a burden intentionally designed to be 'difficult to meet.'" *Owens v. Trammell*, 792 F.3d 1234, 1242 (10th Cir. 2015) (citation omitted).

This Court first determines "whether the petitioner's claim is based on clearly established federal law, focusing exclusively on Supreme Court decisions." *Hanson v. Sherrod*, 797 F.3d 810, 824 (10th Cir. 2015). "A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of [the United States Supreme Court.]" *Thaler v. Haynes*, 559 U.S. 43, 47 (2010). If clearly established federal law exists, this Court then considers whether the state court decision was contrary to or an unreasonable application of clearly established federal law. *See Owens,* 792 F.3d at 1242.

"A state court's decision is 'contrary to' clearly established federal law 'if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts.'" *Id.* (citations omitted). Notably, "[i]t is not

enough that the state court decided an issue contrary to a lower federal court's conception of how the rule should be applied; the state court decision must be 'diametrically different' and 'mutually opposed' to the Supreme Court decision itself." *Id.* (citation omitted).

The "'unreasonable application' prong requires [the petitioner to prove] that the state court 'identified the correct governing legal principle from Supreme Court decisions but unreasonably applied that principle to the facts of the prisoner's case.'" *Id.* (citations and internal brackets omitted). On this point, "the relevant inquiry is not whether the state court's application of federal law was *incorrect*, but whether it was 'objectively unreasonable.'" *Id.* (citations omitted, emphasis in original). So, to qualify for habeas relief on this prong, a petitioner must show "there was no reasonable basis for the state court's determination." *Id.* at 1242-43 (citation omitted).

In sum, "[u]nder § 2254(d), a habeas court must determine what arguments or theories supported . . . the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Harrington,* 562 U.S. at 101–02. Relief is warranted only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Id.* at 102. The deference embodied in § 2254(d) "reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102-03 (citation omitted).

If the state appellate court has not addressed the merits of a claim, the Court exercises its independent judgment. *See Littlejohn v. Trammell*, 704 F.3d 817, 825 (10th Cir. 2013) ("For federal habeas claims not adjudicated on the merits in state-court proceedings, we exercise our 'independent judgment[.]'" (citation omitted)). But "[a]*ny* state-court findings of fact *that bear upon the claim* are entitled to a presumption of correctness rebuttable only by 'clear and convincing evidence.'" *Hooks v. Workman*, 689 F.3d 1148, 1164 (10th Cir. 2012) (emphasis added) (quoting 28 U.S.C. § 2254(e)(1) (1996)).

## III.   STANDARD OF REVIEW FOR INEFFECTIVE ASSISTANCE OF COUNSEL

The standard for proving ineffective assistance of counsel was set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on such claim, the accused must prove deficient performance and prejudice. *Strickland*, 466 U.S. at 687. To prove deficiency, the accused must overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional conduct. *Id.* at 689. To prove prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694.

On habeas review, When the claim at issue is one for ineffective assistance of counsel, AEDPA review is "doubly deferential." *Cullen v. Pinholster,* 563 U.S. 170, 190 (2011). Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (quoting *Strickland,* 466 U.S. at 690 (1984);

6

internal quotation marks omitted). In such circumstances, federal courts are to afford "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow,* 134 S. Ct. 10, 13 (2013). Thus, the pivotal question is whether the state court's application of *Strickland* was reasonable. *Harrington v. Richter,* 562 U.S. 770, 785 (2011). The Court should answer this question affirmatively.

## IV.   GROUND ONE--INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILURE TO ADEQUATELY PREPARE PETITIONER FOR TRIAL AND PROVIDE HER WITH M.B.'s MEDICAL RECORDS

In Ground One, Petitioner alleges that her trial attorney, Rene Gish, was ineffective in communicating with Petitioner and preparing her for trial. (ECF No. 1:3-4).[5] The OCCA rejected this argument on direct appeal, stating:

> Hammers claims that counsel, who entered an appearance in the case a year and a half before trial, failed to communicate with her and failed to prepare her for trial. The record does not support this claim. Hammers does not show what testimony she would have given, or how her testimony would have been different if she had the victim's medical records, and had counsel differently prepared her for trial.

(ECF No. 16-3:4). The OCCA's decision was consistent with Supreme Court precedent.

---

[5] In connection with this claim on direct appeal, Ms. Hammers filed a Rule 3.11 Motion to Supplement the Record and for Evidentiary Hearing. Application for Supplementation of Appeal Record and for Evidentiary Hearing on Claim of Ineffective Assistance of Trial Counsel, *Hammers v. State of Oklahoma*, Case No. F-2014-573 (Okla. Ct. Crim. App. Aug. 10, 2015). As part of the motion, Ms. Hammers attached copies of text messages and emails to support her claim regarding lack of communication and trial preparation. Petitioner attaches the same evidence to her habeas petition. *See* ECF No. 1-2. The OCCA granted Petitioner's Motion to Supplement the Record, but denied Petitioner's claim that her counsel had been ineffective through a failure to communicate and prepare her for trial. (ECF No. 16-3:3-4). Under these circumstances, the OCCA's review of the extra-record evidence and subsequent denial is considered a denial on the merits on the claim and will be accorded deference under the AEDPA. *See Wilson v. Sirmons*, 536 F.3d 1064, 1079 (10th Cir. 2008) ("Had the state court evaluated the non-record evidence in its denial of Mr. Wilson's *Strickland* claim and his request for an evidentiary hearing, we would apply AEDPA's deferential standard.").

According to Ms. Hammers, trial counsel failed to: (1) communicate and consult with Petitioner "to determine what other activities could have been considered to have caused the injuries [to M.B.]" and (2) give Petitioner copies of M.B.'s medical records so that she could understand the nature of her son's injuries and better prepare for trial. (ECF No. 1:3-4).[6] As a result, Ms. Hammers alleges that she "failed to make intelligent and informed decisions" and suffered prejudice in the form of her testimony, "when she appeared to have abandoned her defense of accident" and "left the jury with the impression that [she] was 'floundering' in her effort to provide a reasonable explanation." (ECF No. 1:3-4).

Prior to trial, Petitioner had attributed M.B.'s injuries to: (1) the accident involving her older son whom allegedly fell on M.B. during a diaper change and (2) "rough" play between M.B. and his brother while the baby was seated in a "bouncy jumper." (Trial TR. Vol. II 75-78, 80, 102, 212, 216-217). At trial, Ms. Hammers testified that after she learned about M.B.'s injuries at the hospital, she told investigators about the accident and the bouncy jumper as possible causes. (Trial TR. Vol. IV 103-104). But Petitioner then testified that once she became aware of the full extent of M.B.'s injuries upon hearing the testimony of various medical officials the day prior, she believed M.B.'s injuries were actually the result of abuse, although she did not know by whom. (Trial TR. Vol. IV 110, 112, 113, 123).

---

[6] In Ground One, Petitioner also complains that trial counsel failed to prepare and call witnesses on her behalf. (ECF No. 1:3-4). Petitioner elaborates on this allegation in Grounds Two and Three and the undersigned will address the arguments accordingly. *See infra*.

In Ground One, Petitioner alleges that her trial attorney rendered ineffective assistance for failing to provide her with M.B.'s medical records or otherwise consulting with her prior to trial. (ECF No. 1:3-4). Apparently, Ms. Hammers believes that if Ms. Gish had given her the medical records and consulted with her regarding their findings, the two could have "determined what other activities could have been considered to have caused the injuries [to M.B.]." (ECF No. 1:3). Instead, Petitioner alleges that because she only learned the full extent of the baby's injuries the day before, she was effectively ambushed with the information and had to admit that the injuries were caused by abuse, thereby "abandon[ing] her defense of accident," and "le[aving] the jury with the impression that [she] was 'floundering' in her effort to provide a reasonable explanation." (ECF No. 1:4).

If Ms. Gish had provided the records or consulted with Petitioner regarding what the records revealed, she would have likely reached the same conclusion, only earlier. The jury would still have been privy to the fact that Ms. Hammers "appeared to have abandoned her defense of accident" based on the testimony of various officials who had interviewed Ms. Hammers at the hospital, and had testified regarding her earlier theories of causation. In light of such conclusion, the only remaining question was who, *not what*, had caused the injuries. This inquiry was thoroughly explored on direct examination, when trial counsel asked Ms. Hammers who had been responsible for M.B. other than herself. (Trial TR. Vol. IV 104-108). In response, Ms. Hammers stated that her next-door neighbor, Heather Hulsey, had cared for M.B. several times and the baby had been watched one time by a nanny hired by her ex-husband. (Trial TR. Vol. IV 104-

108). The implication, therefore, was that either, or both, of those individuals could have committed the abuse. (Trial TR. Vol. IV 108).

Assuming the truth of Petitioner's testimony, further consultation with Ms. Gish or access to M.B.'s medical records which showed the varying ages of his injuries would not have changed her testimony that the injuries were caused by abuse and that other individuals could have been responsible. As stated by the OCCA, Ms. Hammers "does not show what testimony she would have given, or how her testimony would have been different if she had the victim's medical records, and had counsel differently prepared her for trial." (ECF No. 16-3:4). Under *Strickland*, to prove prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Here, the OCCA determined that Petitioner had not met this burden. (ECF No. 16-3:4). Giving this conclusion "doubl[e] deferen[ce]" the Court should conclude that the OCCA's determination was reasonable. *Cullen*, 563 U.S. at 190.

## V.   GROUND TWO--INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILURE TO HIRE EXPERT WITNESSES

In Ground Two, Ms. Hammers alleges that her trial counsel was ineffective for failing to hire expert witnesses who could have testified regarding: (1) Shaken Baby Syndrome (SBS) and (2) the hazards of "baby jumpers." (ECF No. 1:4-8). According to Petitioner, doctors at OU Children's Hospital "asserted that [M.B.'s] injuries were caused by SBS whereas Petitioner claims the eye injury was the result of the accidental fall and (after significant research) the bone injuries from a baby jumper." (ECF No. 1:5). As a result, Ms. Hammers argues that because "[t]he defense revolved around injuries that

could only be understood by the triers of fact through expert testimony[,] [ ] failure to obtain such experts deprived Petitioner of a fair trial." (ECF No. 1:4). The OCCA rejected Petitioner's theory on direct appeal, stating:

> This Court will not relitigate the case on appeal. Hammers offers no affidavits from experts suggesting that, in this case, medical evidence would have supported another cause for the victim's injuries. She completely fails to show how expert testimony, or different preparation or evidence presented by counsel, might have made a difference in this case. The mere fact that experts might disagree over the general parameters of Shaken Baby Syndrome does not make opposing expert testimony relevant in this case. Every prosecution expert does not require an equal and opposite expert from the defense.

(ECF No. 16-3:4) (internal citations omitted). The OCCA's determination was reasonable.

In Ground Two, Petitioner provides information regarding the history and evolution of SBS. (ECF No. 1:5). According to Petitioner, SBS was a hypothesis created in the 1970s to explain certain injuries to children and which required proof of: (1) subdural hematomas, (2) retinal hemorrhages, and (3) cerebral edema. (ECF No. 1:5). In the 1980s, Petitioner asserts that scientists and medical professionals concluded that: (1) "SBS was impossible to occur without a serious neck injury and (2) multiple causes could result in the same symptoms that had been restricted to SBS only." (ECF No. 1:5). According to Petitioner, if counsel would have procured expert testimony, the result of the proceedings might have been different because experts could have:

- contradicted the State's experts whom Petitioner alleges falsely testified that M.B. suffered from retinal hemorrhaging,

- contradicted the State's experts who testified that only two of the three injuries required to prove SBS were present,

- testified regarding the effect of a two-week interval between the accident and when Petitioner took M.B. to the emergency room,

- corroborated M.B.'s babysitter and others who had not suspected abuse, as well as reports from the baby's physician and wellness checks,

- testified that Petitioner's statements about the bouncy jumper were consistent with a statement made by a physician who had stated that it appeared as though "someone had jerked the infants [sic] legs down at the same time, resulting in the leg fractures,

- corroborated Petitioner's testimony regarding the causes of M.B.'s injuries, and

- testified to the absence of a neck injury in M.B.'s case, which would disprove the State's theory of SBS. [7]

(ECF No. 1:6-7).[8]

All of Petitioner's theories of prejudice hinge on assumptions regarding how defense experts might have testified.[9] But as found by the OCCA, Petitioner has offered no evidence from any expert to substantiate her theories. (ECF No. 16-3:4). As noted by the Supreme Court:

---

[7] Petitioner also alleged: (1) the State has launched an "innocence project" due to the State having relied on a "'partial triad' of a debunked theory in other cases. (ECF No. 1:6). But this allegation has no bearing on Petitioner's claim that counsel was ineffective for failing to retain expert witnesses.

[8] In her Response, Ms. Aldridge argues that these theories of ineffective assistance of counsel are subject to an anticipatory procedural bar, as they were not raised on direct appeal. (ECF No. 16:32-40). But the Court need not address the issue of procedural bar and may instead address the merits of the claim "because the denial of relief can be 'more easily and succinctly affirmed' on that basis."). *Neill v. Gibson*, 278 F.3d 1044, 1063 (10th Cir. 2001).

[9] *See* ECF No. 1:7-8 ("Due to counsel not understanding or knowing the progress on SBS resulted in failure to present a defense of accident as petitioner has stated all along. Petitioner was left without the ability of showing by evidence and experts the possibility of accident. Counsel failed to provide evidence that was readily available on SBS and child jumpers. Counsel left the bone injuries without any explanation or understanding leaving it to the state's inference that it was abuse. Counsel failed to show that the statement from Dr. Stuemky supported Petitioners [sic] explanation of the fractures possibly being the result of older children pulling down on the jumper while playing with him.") (internal numbering omitted).

> In assessing prejudice under *Strickland,* the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." The likelihood of a different result must be *substantial*, not just conceivable.

*Harrington*, 562 U.S. at 111-112 (emphasis added).

Here, Petitioner offers nothing more than speculation regarding how expert witnesses *might* have testified in support of her defense. This type of speculation is insufficient to demonstrate prejudice. *See Moore v. Reynolds*, 153 F.3d 1086, 111-1112 (1998) (affirming denial of habeas relief because "[petitioner's] arguments as to what the requested experts might have said are entirely speculative" and insufficient to show prejudice). Furthermore, Ms. Hammers' theory that if Ms. Gish had retained said experts, "she *could have* rendered a different verdict" falls far below what the United States Supreme Court requires to demonstrate prejudice in habeas cases involving ineffective assistance of counsel. (ECF No. 1:6); *See Harrington*, 562 U.S. at 111-112; *Strickland*, 466 U.S. at 694. Accordingly, the Court should conclude that the OCCA's rejection of Ground Two was not contrary to or an unreasonable application of Supreme Court precedent and habeas relief should be denied.

## VI.   GROUND THREE--INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILURE TO CALL AND PRESENT WITNESSES

In Ground Three, Ms. Hammers alleges that her trial attorney was ineffective for failing to call Dr. Bill Buffington as a witness and properly prepare other defense

witnesses for trial. (ECF No. 1:8-9). On direct appeal, Ms. Hammers only raised the issue involving Dr. Buffington. *See* ECF No. 16-1:27-28. The OCCA rejected this claim, stating:

> Hammers also claims trial counsel should have called a particular witness. The record shows that trial counsel knew of this witness and chose not to call him, and supports our conclusion that this was a reasonable strategic decision.

(ECF No. 16-3:5). The OCCA's conclusion was consistent with Supreme Court precedent. Because Ms. Hammers failed to raise the issue concerning the other witnesses on direct appeal, these claims are technically unexhausted and potentially subject to procedural default. But because the claims may be more easily disposed of on the merits, the Court may circumvent the issue of procedural default and decide the merits. *See supra* n.8. In doing so, the Court should exercise its independent judgment and reject Petitioner's claim.

### A.    Dr. Bill Buffington

Petitioner contends that Ms. Gish was ineffective for failing to call Dr. Bill Buffington, former physician for Ms. Hammers and M.B., as a defense witness. (ECF No. 1:3-4, 8). According to Ms. Hammers, Dr. Buffington would have attested to: (1) M.B.'s health and (2) Petitioner's health "to refute the slander of her character as a drug addict." (ECF No. 1:3-4, 8). Petitioner's allegations do not support a claim of ineffective assistance of counsel for two reasons.

First, State's witness Dr. John Stuemky testified that the types of injuries suffered by M.B. "are uniformly missed by primary care physicians" in the absence of other noticeable external injuries, especially because an infant is not able to verbalize

the nature of his injuries. (Trial TR. Vol. III 130-141). Thus, Dr. Stuemky's testimony essentially corroborates what Petitioner believes that Dr. Buffington would have stated regarding M.B.'s overall health during well-child check-ups. Even with such information, the jury still rendered a guilty verdict and Petitioner offers no other argument regarding what Dr. Buffington would have stated that would have likely changed the outcome.

Second, despite evidence that Ms. Hammers was prescribed over 1,000 pills of narcotic and sleep medications during a 4-month period, Petitioner alleges that Dr. Buffington would have testified that Petitioner was not addicted to narcotics, but only took the amounts of medication he prescribed.[10] (Trial TR. Vol. IV 116). According to Petitioner, Dr. Buffington's testimony would have bolstered her character "in light of the state's accusation of her being an 'addict.'" (ECF No. 1:4). But Petitioner herself testified that Dr. Buffington "overprescribed" medication in "excessive" amounts. (Trial TR. Vol. IV 82-83, 116). And according to Ms. Hammers, Dr. Buffington dismissed her as a patient not because she was displaying "drug-seeking" behaviors, but rather because she believed the physician was "scared of a malpractice lawsuit because of how much he was prescribing [her]." (Trial TR. Vol. IV 117). In light of this information, it would have been reasonable trial strategy for Ms. Gish not to have called Dr. Buffington as a witness, for fear that his credibility would have been impeached by the amounts of narcotics he had prescribed and the fact that Petitioner testified regarding a possible malpractice suit against the physician.

---

[10] *See* ECF No. 1-3:1-2 (affidavit from Dr. Buffington stating he treated Ms. Hammers for musculoskeletal injuries for which he prescribed "a lot of narcotic pain medication," but that Petitioner always stayed in the guidelines that he had established regarding her prescribed pain medication and he never believed that Ms. Hammer's displayed "drug seeking" behaviors or exhibited adverse physical or mental symptoms from her pain medication).

"Strategic decisions are constitutionally ineffective only if they are completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense strategy." *Parker v. Jones*, 423 F. App'x. 824, 828 (10th Cir. 2011) (internal citation and quotation marks omitted) (quotation omitted). Indeed, under *Strickland,* "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91. Based on Petitioner's own testimony regarding a potential lawsuit and the evidence of the number of narcotics Dr. Buffington prescribed, Ms. Gish's decision to not call him as a witness was a reasonable trial strategy, and therefore not deficient. The OCCA agreed and the Court should conclude that the state court's decision was consistent with Supreme Court precedent and habeas relief is not warranted.

### B.    Other Witnesses

Petitioner also alleges that trial counsel was ineffective by failing to adequately prepare defense witnesses for trial, namely Mr. Hall, Ms. Hulsey, and Petitioner's parents. In support of this claim, Petitioner states:

> Petitioner's parents and [Ms. Hulsey] attested to the absence of abuse. Ben Hall a friend of the petitioner who witnessed the accident the week of Thanksgiving supported petitioner's defense of accident. Counsel could have maximized the use of this evidence yet failed to even prepare her witnesses for trial despite repeated requests from petitioner to strategize and consult with her about the defense.

(ECF No. 1:8). Other than broad allegations that Ms. Gish "failed to prepare her witnesses for trial" Petitioner does not explain what she believed Ms. Gish should have

16

done to better prepare the witnesses. Accordingly, and on *de novo* review, the Court should reject Petitioner's claims as they relate to counsel's alleged ineffectiveness for failing to adequately prepare these witnesses. *See Cummings v. Sirmons*, 506 F.3d 1211, 1227 (10th Cir. 2007) (rejecting habeas petitioner's claim that his trial counsel was ineffective in failing to prepare for trial because petitioner "fail[ed] to identify what additional preparation trial counsel should have engaged in").

## VII.  GROUND FOUR--INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILING TO OBJECT TO TESTIMONY

In Ground Four, Ms. Hammers alleges that her trial attorney was ineffective for: (1) failing to object to facts "not in evidence and in violation of [a motion] in *limine*," and (2) "deficient[ly]" objecting to the State's "accusatory implication of petitioner's use of pain killers, labeling petitioner as an addict." (ECF No. 1:9). As a result, Ms. Hammers argues:

> (1)   Counsel failed to provide the court with support that detectives who interviewed petitioner stated that if petitioner had been under the influence they would have known since they had been trained in that specific area and

> (2)   The state hacked away at the character of the petitioner using unsupported accusations based on supposed facts not in evidence without any defense from counsel to the contrary.

(ECF No. 1:9). On direct appeal, the OCCA rejected this claim, stating:

> Hammers claimed that trial counsel should have objected to what she alleges was inadmissible evidence. Hammers did not raise the admissibility of this evidence as a separate substantive proposition of error. We will not determine, in this ineffective assistance claim, whether the evidence should have been admitted. Our review is limited to whether counsel's acts or omissions so prejudiced Hammers that she was denied a fair trial. Hammers argues only that the admission of the evidence focused the State's case on Hammers' character rather than the charges against her.

> The record does not support this claim. She has not shown she was prejudiced by admission of the evidence.

(ECF No. 16-3:5). The OCCA's determination was reasonable and consistent with Supreme Court precedent.

At the outset of trial and in connection with the State's intent to call Ms. Hammers' ex-husband Matthew Bryant as a witness, the State filed a Motion in *Limine* to preclude the defense from eliciting any evidence or testimony regarding the tumultuous relationship between Ms. Hammers and her former husband. Volume I of IV Transcript of Trial Proceedings had on the 24th day of February, 2014 Before the Honorable Donald L. Deason, *State of Oklahoma v. Megan Nicole Hammers*, Case No. CF-2012-578 (Okla. Co. Feb. 24, 2011) at 7-8 (Trial TR. Vol. I). Defense counsel agreed and the Court sustained the motion. (Trial TR. Vol. I 8). On direct examination of State witness Ms. Hulsey, she testified that during late November 2011, Ms. Hammers was going through an "angry divorce," which caused her stress. (Trial TR. Vol. III 61-62). Ms. Gish did not object, but on cross-examination, Ms. Hulsey stated that there was no reason to believe she could not trust Ms. Hammers to watch Ms. Hulsey's children and she never saw Petitioner exhibit violence towards her children. (Trial TR. Vol. III 64-65).

Following this exchange, the parties approached the bench and the prosecutor stated that although he had advised Ms. Hulsey not to testify about Petitioner's use of prescription pain medication, he believed defense counsel had "opened the door" to the subject through her questions regarding whether Ms. Hulsey would feel comfortable leaving her children with Ms. Hammers. (Trial TR. Vol. III 65-66). In response, Ms. Gish

18

stated that she had specifically stayed away from any "substance abuse issues" because it was a "nonissue." (Trial TR. Vol. III 66). The Court agreed with the prosecutor that the door had been opened, and the State proceeded to question various witnesses, including Ms. Hammers, regarding her use of prescription narcotics and sleep medications.

The comment regarding the "angry" divorce may have been improper as excluded by the Motion in *Limine*, and the evidence regarding Petitioner's use of pain pills may have diminished her credibility. But as noted by the OCCA, Ms. Hammers did not challenge the admissibility of the evidence, only whether her counsel's failure to object was constitutionally deficient. Accordingly, Ms. Hammers would have to demonstrate a reasonable probability that but for counsel's failure to object, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Petitioner makes two arguments to support her claim, but both are deficient.

First, Petitioner complains that "Counsel failed to provide the court with support" that the detective who interviewed her would have testified that she did not appear impaired. (ECF No. 1:9). The argument is untenable as the jury heard testimony from Edmond Police Detective David Otwell who stated that when he interviewed Ms. Hammers she was "very cooperative" and "very coherent." (Trial TR. Vol. II 88).

Second, Ms. Hammers contends that the comments allowed "the state [to] hack [ ] away at the character of the petitioner." (ECF No. 1:9). This argument is insufficient to support a claim of ineffective assistance of counsel. *See United States v. White*, 302 F. App'x. 813, 815 (10th Cir. 2008) (rejecting appellant's claim for a COA based on

ineffective assistance of counsel for failure to object to a line of questioning because appellant "cannot point to any prejudice resulting from his counsel's failure to object."); *Reynolds v. Hannigan*, 53 F. Supp. 2d 1149, 1156 (D. Kan. 1999) (rejecting habeas petitioner's claim for ineffective assistance of counsel based on counsel's failure to object to the admission of certain evidence, stating: "although the petitioner's counsel's conduct may have been improper, the petitioner cannot show that but for . . . the failure to object . . . the outcome of the trial may have been different.").

Furthermore, as the comments relate to Petitioner's character, it was the province of the jury to weigh the evidence and determine the credibility of Ms. Hammers in light of the totality of the evidence. The jury was so instructed and it is not for this Court to second-guess that decision. (O.R. 189); *See Kansas v. Ventris,* 566 U.S. 586, 594, n.* (2009) ("[o]ur legal system, however, is built on the premise that it is the province of the jury to weigh the credibility of competing witnesses, and we have long purported to avoid establish[ing] this Court as a rule-making organ for the promulgation of state rules of criminal procedure.") (internal quotation marks and citations omitted). Accordingly, the Court should reject Ground Four as a basis for habeas relief.

## VIII.  RECOMMENDATION

It is recommended that Ms. Hammers' Petition for Writ of Habeas Corpus **(ECF No. 1)** be **DENIED**.

## IX.  NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file an objection to this Report and Recommendation with the Clerk of this Court by **February 10, 2016**, in accordance

with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## X.      STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED on January 24, 2017.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE